IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PATTY DURAND,<br><br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER TIM G. ECHOLS, in his individual and official capacities as a Commissioner of the Georgia Public Service Commission,<br><br>  Defendant. | Civil Action No.<br>1:22-cv-04548-VMC |

# ORDER

This matter is before the Court on Defendant Tim Echols's ("Defendant" or "Commissioner Echols") Motion to Dismiss. (Doc. 9). For the reasons below, the Court will grant in part and deny in part Defendant's Motion.

## I. Background

Because this case is before the Court on a Motion to Dismiss, the following facts are drawn from Plaintiff's Complaint and are accepted as true. *Cooper v. Pate*, 378 U.S. 546, 546 (1964).

Plaintiff Patty Durand ("Plaintiff" or "Ms. Durand") filed this case seeking injunctive relief and damages after Commissioner Echols blocked her and others from accessing his social media accounts. ("Compl.," Doc. 1). Ms. Durand is a concerned and active citizen who has voiced her opposition to policy positions

articulated by Commissioner Echols on Twitter account, and was a former candidate for Commissioner Echols's seat on the Georgia Public Service Commission (the "Commission") before that election was enjoined in 2022. (*Id.* ¶ 7). Commissioner Echols created his Twitter account, @timechols, in August 2008. (*Id.* ¶ 9). On his Twitter account, Commissioner Echols routinely posts content related to his elected government position and work related thereto. (*Id.* ¶ 12). In addition, Commissioner Echols documents his governmental and public activities as a Public Service Commissioner, including links to online and print articles he has authored that identify him as a Commissioner. (*Id.*) Moreover, he discusses issues relevant to the responsibilities of the Commission on his social media accounts. (*Id.*).

Prior to being blocked, Ms. Durand repeatedly engaged with Commissioner Echols on Twitter. (*Id.* ¶ 22). Ms. Echols viewed and replied to Commissioner Echols's Twitter posts, and "tagged" or "tweeted at" Commissioner Echols by including a link to his account in her own Twitter posts. (*Id.*). After years of "tweet" exchanges between Ms. Durand and Commissioner Echols, Commissioner Echols blocked Ms. Durand on Twitter. (*Id.* ¶ 30). Ms. Durand never made any threatening posts directed at Commissioner Echols or anyone else. (*Id.* ¶ 30). Commissioner Echols also blocked Ms. Durand from interacting with his Facebook posts. (*Id.* ¶ 54).

Ms. Durand commenced the foregoing lawsuit after being blocked on Commissioner Echols's social media accounts. The lawsuit alleges Commissioner Echols violated Ms. Durand's free speech rights under the First and Fourteenth Amendments. (Doc. 1). Ms. Durand seeks monetary damages, as well as declaratory and injunctive relief. Ms. Durand moved for a preliminary injunction after filing the lawsuit (Doc. 2), but withdrew her motion on January 9, 2023 after Commissioner Echols unblocked Ms. Durand on his Twitter and Facebook accounts. (Doc. 7). Commissioner Echols also "committed to not delete any comments on Facebook Page and Twitter Account based on the viewpoints expressed." (*Id.*).

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although the plaintiff is not required to provide "detailed factual

allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555.

## III.   Discussion

Commissioner Echols argues that Ms. Durand's lawsuit fails to state a claim. (Doc. 9). In support, Commissioner Echols contends that 1) Ms. Durand's individual capacity claims for monetary damages "are barred by qualified immunity because the law is not 'clearly established' that [his] conduct is unconstitutional and 2) Ms. Durand's claims for injunctive and declaratory relief are moot because [he] has unblocked her and has no intention . . . to block her in the future." (Doc. 9-1 at 5-6).

### A.   Claims for Declaratory and Injunctive Relief (Count 3)

In response to Commissioner Echols's Motion, Ms. Durand agreed to dismiss her claim for injunctive relief. Because there is no longer a dispute as to whether Ms. Durand is entitled to declaratory and injunctive relief, Count 3 is dismissed. Thus, the only question before the Court is whether qualified immunity bars Ms. Durand's claims against Commissioner Echols in his individual and/or official capacity.[1]

---

[1] Ms. Durand also alleges Counts 1 and 2 against Commissioner Echols in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (explaining the difference between personal- and official-capacity action suits).

4

### B. Counts 1 and 2 Against Commissioner Echols in his Individual Capacity

Commissioner Echols argues that he is entitled to qualified immunity on Counts 1 and 2 in Ms. Durand's Complaint because "[t]here are no cases from the Supreme Court, Eleventh Circuit, or Georgia Supreme Court where a state government employee 'acting under similar circumstances as [Echols] was held to have violated the [First] Amendment.'" (Doc. 9-1 at 8) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

#### i. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their *individual capacities* unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Militello v. Sheriff of Broward Sheriff's Off.*, 684 F. App'x 809, 812 (11th Cir. 2017). In order to receive qualified immunity, "a government official first must prove that he was acting within his discretionary authority." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). To do so, a government official must establish he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the

5

defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358. The Parties do not dispute that Commissioner Echols was acting in his discretionary authority when he blocked Ms. Durand and others from his Twitter and Facebook accounts.

Because Commissioner Echols acted in his discretionary authority, the Court must engage in a two-prong inquiry. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). First, the Court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). Second, the Court must determine whether the constitutional right at issue "was clearly established at the time of the alleged violation." *Harland*, 370 F.3d at 1264. In deciding whether a constitutional right was "clearly established," the Court's relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009) (citation omitted). In making these determinations, the Court "need not employ a rigid two-step procedure, but rather may exercise [its] discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Gilmore v. Hodges*, 738 F.3d 266, 273 (11th Cir. 2013) (quoting *Pearson*, 555 U.S. at 236).

For the purposes of assessing qualified immunity in this Order, the Court will only address the second prong of the inquiry because, in his Motion, Commissioner Echols does not argue that Ms. Durand's Complaint fails to sufficiently allege a constitutional violation occurred.

### ii. Clearly Established Right

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood what he is doing violates that right.'" *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1273 (11th Cir. 2021) (citing *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In the Eleventh Circuit

> Rights may be clearly established for qualified immunity purposes by one of three methods: (1) case law with indistinguishable facts clearly establishing the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018) (citations and quotations omitted).

Ms. Durand acknowledges that there are no Eleventh Circuit opinions with indistinguishable facts that clearly establish a constitutional violation under the facts alleged in this case. However, Ms. Durand argues that: "[1] deleting messages or blocking a poster because the message is disfavored is clearly unconstitutional viewpoint discrimination and retaliation for speech; [2] the banning of particular speakers, without any standards for doing so, is a prior restraint on speech; and [3] the complete lack of discretion to ban speakers or to delete/hide messages is clearly unconstitutional because the basis for censorship are at the whim of the administrator." (Doc. 13 at 6). But the courts have rejected the theory that general First Amendment principles are sufficient to give notice to government officials that they engage in impermissible viewpoint discrimination when they block access to a member of the public on their social media pages. *See Taylor v. Palmer*, No. 21-14070, 2023 WL 4399992, at *4 (11th Cir. July 7, 2023) (finding that a mayor was entitled to qualified immunity because it was not clearly established that blocking a member of the public from posting on the mayor's social media page violated the First Amendment); *Biedermann v. Ehrhart*, No. 1:20-CV-01388-JPB, 2022 WL 769215, at *6 (N.D. Ga. Mar. 14, 2022) (holding the law was not sufficiently clear in 2018 "on the constitutionality of blocking a citizen from a government official's social media page.").

And while the Court recognizes that Commissioner Echols blocked Ms. Durand from his social media pages in early 2023, it remains true that "the law in this area – the intersection of First Amendment rights and engagement with government officials' social media pages – is unsettled and continues to evolve." *Biedermann*, 2022 WL 769215 at 6*; *see also* Adam Liptak, *Supreme Court to Decide Whether Officials Can Block Critics on Social Media*, N.Y. Times (Apr. 24, 2023), https://www.nytimes.com/2023/04/24/us/elected-officials-social-media-supreme-court.html. Accordingly, the Court finds that Commissioner Echols is entitled to qualified immunity on the individual capacity claims against him.

### C. Counts 1 and 2 Against Commissioner Echols in His Official Capacity

As noted earlier, Ms. Durand sued Commissioner Echols in both his individual and official capacity. (Doc. 1). Commissioner Echols did not raise any defenses to the official capacity claims in his Motion. Furthermore, qualified immunity is not a proper defense to official capacity claims. *See Bruce v. Beary*, 498 F.3d 1232, 1248 (11th Cir. 2007) (finding that a government official sued in their official capacity for alleged constitutional violations is not entitled to the individual capacity defense of qualified immunity). Therefore, to the extent Commissioner Echols's Motion argues that the official capacity claims against him should be dismissed, the Motion is denied.

## IV. Conclusion

For the reasons above, Defendant's Motion to Dismiss (Doc. 9) is **DENIED** in part and **GRANTED** in part. Count 3 is **DISMISSED** as agreed upon by the Parties. Commissioner Echols is entitled to qualified immunity on the individual capacity claims brought against him, however, Counts 1 and 2 are allowed to proceed against him in his official capacity. Per the Court's prior order (Doc. 12), the Parties shall conduct their Rule 26(f) conference and make their initial disclosures within fourteen (14) days following entry of this Order. And the Parties' Joint Preliminary Report and Discovery Plan should be filed with the Court within twenty-one (21) days following this Order.

**SO ORDERED** this 27th day of July, 2023.

_____
Victoria Marie Calvert
United States District Judge